08 CV 7110

(180739.1)

Maurice W. Heller (MH-7996)
Amy Mosery (AM-1478)
HELLER HOROWITZ & FEIT, P.C.
292 Madison Avenue
New York, New York
(212) 685-7600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOYCE AND IRVING GOLDMAN FAMILY
FOUNDATION, INC.,

                    Plaintiff,

-against-

ROBERT FALOR, JENNIFER FALOR, CHRIS
FALOR, DAVID FALOR, GUY MITCHELL
and GEOFFREY HOCKMAN,

                    Defendants.
------------------------------------------------------------X

Index No.

COMPLAINT

RECEIVED
AUG 1 1 2008
U.S.D.C. S.D.N.Y.
CASHIERS

       Plaintiff, Joyce and Irving Goldman Family Foundation, Inc., by its attorneys, Heller, Horowitz & Feit, P.C., as and for its Complaint against the defendants, alleges as follows:

### JURISDICTION AND VENUE

    1.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). The matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

    2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff is a Non-Profit Corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 417 Fifth Avenue, County of New York, State of New York.

4. Upon information and belief Defendant Robert Falor is a citizen of the State of Illinois with an address at 500 South Dearborn, Chicago, Illinois 60656.

5. Upon information and belief Defendant Jennifer Falor is a citizen of the State of Illinois with an address at 700 North Orleans, Chicago, Illinois 60656.

6. Upon information and belief Defendant Chris Falor is a citizen of the State of Illinois with an address at 8609 West Bryn Mawr Avenue, Suite 209, Chicago, Illinois 60631.

7. Upon information and belief Defendant David Falor is a citizen of the State of Illinois with an address at 8609 Bryn Mawr Avenue, Suite 209, Chicago, Illinois 60631.

8. Upon information and belief Defendant Guy Mitchell is a resident of the State of Florida with an address at P.O Box 565335, Pincrest, Florida 33256.

9. Upon information and belief, Defendant Geoffrey Hockman is a resident of the State of Minnesota with an address at 222 Merrill Street, Suite 100, Birmingham, Minnesota 48009-6147.

## CLAIM FOR RELIEF

*The Project*

10. In March of 2005, the Hotel 71, a 40 story, 437 guestroom hotel in downtown Chicago (the "Property"), was purchased by Chicago H&S Hotel Property, LLC (the "Purchaser") with the intention of converting it into a condominium hotel. The acquisition and

intended improvement of Hotel 71 were financed by a first mortgage loan of $100,785,289 by Column Financial, Inc. (the "Senior Loan"). The senior loan was then assigned to Wells Fargo Bank as trustee for Credit Suisse First Boston Mortgage Securities Corporation.

11. In addition to the Senior Loan, Hotel 71 Mezz Lender, LLC ("Mezz Lender"), an entity owned by Oaktree Capital Management, LLC, made a mezzanine loan of $27,338,801 to the Purchaser's parent, Chicago H&S Senior Investors, LLC ("Senior Investors") (the "Mezzanine Loan"). Senior Investors owned 100 percent of the membership interests in the Purchaser. The Mezzanine Loan was secured by Senior Investors's membership interest in the Purchaser.

*Chicago H&S Investors, LLC*

12. All of the membership interests in Senior Investors were, in turn, owned by Chicago H&S Junior Investors, LLC ("Junior Investors"). Junior Investors was 100 percent owned by Chicago H&S Investors, LLC (the "Company"), whose members were Mitchell Hotel Group, LLC (35 percent), Robert Falor (7.5 percent), Jennifer Falor (7.5 percent), MSD Investment Co., LLC (15 percent), Chicago H&S Manager, LLC (30 percent), and Plaintiff (5 percent). An organizational chart, which graphically describes the relationship between the various Chicago H&S entities described above, is annexed hereto as Appendix A.

13. As set forth in the Company's operating agreement, executed on or about March 24, 2005 (the "Operating Agreement) Plaintiff agreed to make a "Preferred Capital Contribution" to the Company of $4 million. Plaintiff's membership in the Company was classified as a "Preferred Equity Interest," meaning that Plaintiff would be first in line to receive any distribution income from the Company, which distributions would be used to reduce the

outstanding unpaid balance of the Preferred Capital Contribution. Plaintiff's return on its Preferred Capital Contribution, however, was limited to the fixed percentage of 15 percent (22 percent in the event of default).

14. Pursuant to a Cash Collateral Escrow Agreement, also dated March 24, 2005, the Company was to deliver $600,000 of the proceeds of Plaintiff's Preferred Capital Contribution to the law firm of Brown Raysman Millstein Felder & Steiner, LLP (the "Escrow Agent'), to be held in escrow. Of this amount, $50,000 per month was to be delivered to Plaintiff as its Preferred Return, so long as the balance of Plaintiff's Preferred Unreturned Contribution Account stood at $4,000,000.

15. In addition, Defendants, Plaintiff and the Company entered into a "Put Agreement" simultaneously with the Operating Agreement, pursuant to which the Defendants granted to Plaintiff the option to require that the Defendants purchase Plaintiff's interest in the Company (the "Put") at any time after March 24, 2006, or upon an Event of Default, as defined in section 9 of the Put Agreement. The Put Agreement also gave Defendants the right to toll the exercise of the Put upon certain conditions. The Put purchase price (the "Put Price") was set at the sum of the outstanding balance of the Preferred Return Account and the Preferred Unreturned Contribution Account of Plaintiff, as defined in the Operating Agreement. In essence, Plaintiff was entitled to a return of 15 percent (22 percent in the event of default) on the outstanding unpaid balance of its Preferred Contribution, and this return, plus the outstanding unpaid balance constitutes the Put Price. Defendants were given the right to toll the exercise of the Put for one year upon the delivery to the Escrow Agent of an additional $600,000 as additional security for the payment of Plaintiff's Preferred Return.

16. Under the terms of the Put Agreement, each of the Defendants was jointly and severally liable to pay Plaintiff the Put Price upon the exercise of the Put.

17. In or about March 2006, the parties entered into negotiations which culminated in Plaintiff agreeing to allow Defendants to toll the exercise of the Put under certain terms and conditions. Pursuant to the Addendum to Put Agreement and Cash Collateral Escrow Agreement (the "First Addendum"), Plaintiff agreed to toll its exercise of the Put until the earlier of March 24, 2007 or an Event of Default. In return, Defendants agreed to pay to Plaintiff (a) $340,000, comprised of a $40,000 fee and a $300,000 prepayment on Plaintiff's preferred return through September 30, 2006 and (b) all Plaintiff's fees and expenses, including legal fees, incurred by Plaintiff with respect to the negotiation and documentation of the original Put Agreement and related documents, to the extent not previously paid. Additionally, Defendants agreed, jointly and severally, to deliver to Plaintiff on or before September 15, 2006, time being of the essence, an additional $300,000.00 representing a pre-payment with respect to Plaintiff's Preferred Return for the period October 1, 2006 through March 31, 2007.

*The Failure of the Project*

18. The condominium conversion of Hotel 71 failed to proceed as advertised by its promoters, primarily Defendants Robert Falor and Guy Mitchell, and was ultimately abandoned. Both the Senior and Mezzanine loans were declared in default. Wells Fargo filed a foreclosure proceeding in state court in Chicago, and Mezz Lender began to proceed to foreclose upon its security as well.

19. On or about March 2, 2007, the Purchaser filed for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, in an attempt to stave off the foreclosure.

20. Pursuant to the Put Agreement, the bankruptcy filing by the Purchaser constituted an Event of Default.

21. On or about May 17, 2007, Plaintiff duly notified the Defendants that it was exercising the Put, pursuant to its rights under the Put Agreement, as amended by the First Addendum.

22. As of July 2008, the balance of Preferred Unreturned Contribution Account stood at $3,800,000. In addition, the balance of Plaintiff's Preferred Return Account stood at $285,000. Accordingly, as of July 2008, the total unpaid Put Price, for which Defendants are jointly and severally liable to pay Plaintiff, stood at $4,085,000. As of this date, Defendants have failed to pay this amount, or any portion thereof, to Plaintiff.

23. Pursuant to the terms of the Put Agreement, based upon the current balance of the Preferred Unreturned Contribution Account, the balance of Plaintiff's Preferred Return Account increases by $47,500 per month.

24. Despite Plaintiff's demand for the same, Defendants have not paid these amounts to Plaintiff.

25. Defendants have breached their obligations to Plaintiff under the Put Agreement, as amended.

26. By reason of Defendants breach of the Agreements, Plaintiff has been damaged in the sum of $4,085,000.

27. Defendants are jointly and severally liable to Plaintiff for this amount.

28. In addition, pursuant to the applicable provisions of the Put Agreement, Defendants are jointly and severally liable to Plaintiff for its fees and costs, including its attorney's fees, in enforcing its rights under the Put Agreement, as amended.

**WHEREFORE,** plaintiff demands judgment:

(a) On its Claim for Relief, against Defendants, jointly and severally, the amount of four million eighty-five thousand dollars ($4,085,000.00), plus interest;

(b) Against Defendants, jointly and severally, its costs and disbursements in enforcing its rights under the Put Agreement including, but not limited to, its reasonable attorneys fees, as amended, including, but not limited to, its costs and disbursements in bringing this action including, but not limited to, its reasonable attorneys fees; and

(c) For such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          August 7, 2008

                                              **HELLER HOROWITZ & FEIT, P.C.**

                                              By: _____
                                                   Maurice W. Heller (MH-7996)
                                                   Amy Mosery (AM-1428)

                                              292 Madison Avenue
                                              New York, New York
                                              (212)685-7600

                                              *Attorneys for Plaintiff the Joyce and Irving*
                                              *Goldman Foundation, Inc.*

Appendix

ORGANIZATIONAL CHART

## Chicago H&S Hotel (Hotel 71)



Hotel 71 Organizational Chart (6)